Mr. Justice BRADLEY
delivered the opinion of the court.
Supposing the facts upon the evidence of which the court *417 below declared that the plaintiff could not recover, to have been sufficiently proven, it seems to us that the court erred in taking the view of the case which it did. Rayburn had possession of the bonds for the purpose of purchasing therewith, for the benefit of Mrs. Kitchen, lands of the railroad company which had issued them, “ at or near the average price of five dollars per acre.” Instead of doing this, as he was bound, he sold them to Bedford for six cents on the dollar; and Bedford sold them to Webber at a hundred and fifty per cent, advance, both knowing the object for which Rayburn held the bonds. A clearer ease of fraudulent breach of trust, it is difficult to conceive, and the defendants being participes criminis, were bound to deliver the bonds and coupons to the plaintiff when he demanded them.
It is contended that by the fair construction of the paper, Rayburn was to sell the bonds for what he could get, and invest the proceeds in lands, and non constat that he has not done so; or at all events, the defendants, as purchasers from Rayburn, have good title to the bonds, because he was invested with a trust to sell them. But the paper does not so read. It declares that Rayburn had received “ the sum of one hundred and nineteen thousand dollars in bonds of the Cairo and Fulton Railroad Company, and fifty thousand four hundred and five dollars of coupons, &c., amounting in the aggregate to the sum of one hundred and sixty-nine thousand four hundred and five dollars, which said sum, I promise to expend in the purchase of lands, &e., at or near the average price of five dollars per acre.” In other words, he was to purchase lauds with the bonds and coupons at five dollars per acre, not with the proceeds of them, after being sold at a nominal price. He was to procure an acre for every five dollars of the bonds and coupons. That was the trust which he assumed. If he was unable to perform it, he should have returned the bonds, and n.ot have sold them at six cents on the dollar. The defendants, when they bought them under these circumstances, did so at their peril, and were bound to restore the bonds to the plaintiff. *418 Having refused to do this, they were liable to him for the fair value of the bonds at the time of the demand.
Mrs. Kitchen was not a necessary party to the suit. The bonds were never hers in law. By the laws of Arkansas, a husband cannot legally make a gift to his wife during the marriage. He could not do so at the common law, and the statute of Arkansas which enables a married woman to take and hold property in her own right, expressly provides that no conveyance from a man to his wife, directly or indirectly, shall entitle her to any benefits or privileges of the act.*
Perhaps he might have made an equitable gift for her benefit. But in this case, the husband had not parted with the legal title to the bonds, and had a right to call any person to account who unlawfully converted them.
Judgment reversed, with directions to award a venire de novo.

 Digest of Statutes of Arkansas, p. 765, tit. Married Women.